UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARON PYCIAK,

    Plaintiff,                                               Case No. 17-11415

v.                                                       HON. GEORGE CARAM STEEH

CREDIT ONE BANK, N.A.,

    Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

On July 9, 2018, Defendant Credit One Bank, N.A., filed a motion to compel arbitration, which has been fully briefed. The court heard oral argument on October 3, 2018. For the reasons explained below, Defendant's motion is DENIED.

## BACKGROUND FACTS

Plaintiff Aaron Pyciak filed this action on May 5, 2017, alleging that Defendant violated that Telephone Consumer Protection Act and the Michigan Regulation of Collection Practices Act by making hundreds of unauthorized calls to his cellular telephone in an attempt to collect a debt. Plaintiff's wife, Tricia Pyciak, had a credit card account with Credit One. On

- 1 -

her account application, she provided Aaron Pyciak's cell phone number as a secondary contact. Although Plaintiff did not use the Credit One card to make purchases, he sometimes paid the bill online or over the phone, using his and his wife's joint bank account.

Credit One contends that that Tricia Pyciak defaulted on the credit card account and that it called to collect on the debt owed. The current balance on the account is $681.72.

The cardholder agreement for the Credit One account includes an arbitration provision requiring that disputes between the account holder and Credit One be submitted to binding arbitration. (Doc. 36-2, Ex. B). The agreement provides:

> Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your account, your agent, representative or heirs, or a trustee in bankruptcy.

*Id.* at 5. The agreement further provides that "[i]f you allow someone to use your Account, that person will be an Authorized User." *Id.*

## LAW AND ANALYSIS

Credit One argues that Plaintiff's claims are subject to arbitration under the cardholder agreement. Pursuant to the Federal Arbitration Act, written arbitration agreements "shall be valid, irrevocable, and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Before the court can compel arbitration, it must "first determine whether a valid agreement to arbitrate exists." *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005). "In making this determination, 'ordinary state-law principles that govern the formation of contracts' will apply." *Id. See also Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) ("[I]n determining the enforceability of an arbitration agreement, we apply state law of contract formation."). "While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citations omitted). "Arbitration under the [FAA] is a matter of consent, not coercion." *Id.* (citation omitted).

I. <u>Waiver</u>

Plaintiff argues that Defendant has waived its right to seek arbitration by waiting almost a year before filing its motion. Because of the presumption in favor of arbitration, waiver "is not to be lightly inferred." *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (quoting *Glazer*, 394 F.3d at 450). "[A] party may waive an

agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Id.* (citations omitted).

Defendant raised the arbitrability of this dispute in its answer to the complaint, which was filed July 21, 2017. Doc. 9.  At that time, Defendant stated: "To the extent that Plaintiff was an authorized user of the Account, used the Account himself, or benefitted from the Account, the terms and conditions of the Account apply to him."  Defendant claims that did not learn of the necessary facts to compel arbitration until May 29, 2018, when it took the depositions of Plaintiff and his wife.

Accepting Defendant's claim that it needed discovery in order to determine whether it had a viable motion to compel arbitration, the court cannot find that its actions were "completely inconsistent" with any reliance on the arbitration agreement.  Although Defendant ideally would have taken Plaintiff's deposition sooner, Defendant did not engage in significant motion practice or other actions -- such as failing to raise arbitration in the answer, filing a counterclaim, or engaging in settlement discussions with the court -- that courts have found to be inconsistent with arbitration.  *Cf. Johnson*, 680 F.3d at 718-19 (waiver of arbitration found when defendant "failed to raise

arbitration in its answer; asserted a counterclaim for breach of contract; and actively scheduled and requested discovery, including depositions, rather than moving to compel arbitration following the end of formal settlement discussions"). Moreover, under the circumstances it is not clear that Plaintiff has suffered actual prejudice. Mindful that waiver is not to be "lightly inferred," the court finds that Defendant did not waive its right to seek arbitration.

II.     Estoppel

In general, courts have found that Credit One's arbitration clause is valid and enforceable against the cardholder. *See, e.g., Bibee v. Credit One Bank*, 2015 WL 5178700 (M.D. Tenn. Sept. 4, 2015); Doc. 36 at 10-11 (citing cases). Plaintiff argues that, as a non-signatory to the cardholder agreement, he is not bound by the arbitration provision. "[N]onsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). "Five theories for binding nonsignatories to arbitration agreements have been recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." *Id.*

Defendant argues that Plaintiff is bound by the arbitration agreement under an estoppel theory. "In the arbitration context, the doctrine

- 5 -

recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 418 (4th Cir. 2000) "A nonsignatory is estopped from refusing to comply with an arbitration clause 'when it receives a "direct benefit" from a contract containing an arbitration clause.'" *Id. Accord Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 661 (Nev. 2008) (citing *International Paper*, 206 F.3d at 418).[1] *See also Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 688 (7th Cir. 2005) ("A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause.").

Defendant contends that Plaintiff "directly benefitted" from his wife's credit card "in the form of household purchases such as gas and groceries." Doc. 36 at 15. Plaintiff testified that he was in charge of the

---

[1] Defendant contends that, based upon the choice of law clause in the cardholder agreement, Nevada law applies. Although Plaintiff states that he "disagrees" that Nevada law applies, he has waived any challenge to the application of Nevada law by failing to develop this argument. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

household finances and that payments for the card were made from his and his wife's joint bank account. He read over the credit card offer letter because his wife "wanted to make sure that getting this credit card would be a smart idea." Doc. 36-3 at 36. Plaintiff made payments on the card by phone and by accessing the online account.

Based upon these facts, it cannot be said that Plaintiff *directly* benefitted from the cardholder agreement. Plaintiff did not use the card to make purchases, for example. Nor is Plaintiff attempting to enforce the cardholder agreement against Credit One. Although Plaintiff benefitted from household purchases made on the card and made payments on the account, these "benefits" are too indirect and attenuated to enforce arbitration under an estoppel theory. *See also Zurich*, 417 F.3d at 688 ("But caselaw consistently requires a *direct* benefit under *the contract containing an arbitration clause* before a reluctant party can be forced into arbitration.") (emphasis in original); *Int'l Paper*, 206 F.3d at 418 (estoppel precludes non-signatory from avoiding arbitration "when he has consistently maintained that other provisions of the same contract should be enforced to benefit him").

This conclusion is supported by *A.D. v. Credit One Bank, N.A.*, in which the Seventh Circuit recently rejected a similar estoppel argument

household finances and that payments for the card were made from his and his wife's joint bank account. He read over the credit card offer letter because his wife "wanted to make sure that getting this credit card would be a smart idea." Doc. 36-3 at 36. Plaintiff made payments on the card by phone and by accessing the online account.

Based upon these facts, it cannot be said that Plaintiff *directly* benefitted from the cardholder agreement. Plaintiff did not use the card to make purchases, for example. Nor is Plaintiff attempting to enforce the cardholder agreement against Credit One. Although Plaintiff benefitted from household purchases made on the card and made payments on the account, these "benefits" are too indirect and attenuated to enforce arbitration under an estoppel theory. *See also Zurich*, 417 F.3d at 688 ("But caselaw consistently requires a *direct* benefit under *the contract containing an arbitration clause* before a reluctant party can be forced into arbitration.") (emphasis in original); *Int'l Paper*, 206 F.3d at 418 (estoppel precludes non-signatory from avoiding arbitration "when he has consistently maintained that other provisions of the same contract should be enforced to benefit him").

This conclusion is supported by *A.D. v. Credit One Bank, N.A.*, in which the Seventh Circuit recently rejected a similar estoppel argument

made by Credit One. 885 F.3d 1054, 1063-64 (7th Cir. 2018) (applying Nevada law). In that case, A.D., a minor, used her mother's Credit One card to purchase smoothies that her mother had previously ordered. In claiming that A.D.'s TCPA claim was subject to arbitration, Credit One argued that A.D. should be bound by the arbitration clause because she benefitted by using the card to make a purchase. The Seventh Circuit disagreed, finding that A.D. "derived no direct benefit from the cardholder agreement." *Id.* at 1064. The court further noted that A.D. was not attempting to benefit by enforcing the cardholder agreement; rather, her claim -- like Plaintiff's -- was brought under the TCPA. *Id.* The court concluded that A.D. was not bound by the cardholder agreement and that her TCPA claims were not subject to arbitration. *Id.*

At the hearing, Credit One attempted to distinguish *A.D.* on the basis that A.D. was a minor and Plaintiff is not. However, A.D.'s status as a minor did not factor into the court's reasoning in rejecting Credit One's estoppel argument. Further, Credit One previously relied upon the lower court decision in *A.D.* in a filing before this court, describing *A.D.* as a case with "similar facts" to this one. Doc. 35 at 3. Credit One's argument to the contrary is neither persuasive nor ingenuous.[2] The court finds the Seventh

---

[2] The court is dismayed by Credit One's failure to disclose the Seventh Circuit's opinion

Circuit's decision in *A.D.* to be persuasive and agrees with its estoppel analysis. Plaintiff is not bound by the arbitration clause under an estoppel theory.

III. Authorized User

Credit One also argues that the arbitration clause should be enforced against Plaintiff because he is an "authorized user" on the account. The cardholder agreement provides

> **AUTHORIZED USER:** At your request, we may, at our discretion, issue an additional card in the name of an Authorized User with your credit card account number. If you allow someone to use your Account, that person will be an Authorized User. By designating an Authorized User who is at least fifteen years of age, you understand that: 1) you will be solely responsible for the use of your Account and each card issued on your Account including all charges and transactions made by the Authorized User and any fees resulting from their actions to the extent of the credit limit established for the Account; 2) the Authorized User will have access to certain account information including balance, available credit and payment information. . . .3) we reserve the right to terminate the Card Account privileges of an Authorized User. . . . 4) the Account may appear on the credit report of the Authorized User. . . . 5) the Authorized User can make payments, report the card lost or stolen and remove him or herself from the Account; 6) you can request the removal of the Authorized User from your Account via mail or telephone.

---

in *A.D.*, particularly since it relies upon Nevada law, which Credit One argues applies here.

> **Authorized User Annual Participation Fee:** An Authorized User Annual Participation Fee of $19.00 will be imposed for issuing a card in the Authorized User's name. . . .

Doc. 36-3 at Ex. B. Credit One does not claim that it issued an additional card in Plaintiff's name or that Plaintiff's wife allowed him to use the card to make purchases. Rather, it contends that Plaintiff became an authorized user because he "used" the account by benefitting from purchases, making payments, and accessing the account online. Defendant does not provide authority for the proposition that these actions make Plaintiff an authorized user under the cardholder agreement.

The Seventh Circuit in *A.D.* rejected Credit One's argument that A.D.'s use of her mother's credit card for a purchase made her an "Authorized User" under the cardholder agreement. Viewing the cardholder agreement as a whole, the court noted that the agreement "sets forth a *specific* procedure that an account holder must follow to add an authorized user to her account. . . . [A]n account holder must notify Credit One that she wishes to add an Authorized User to the account, so that Credit One can issue a card in the Authorized User's name." *A.D.*, 885 F.3d at 1061. Here, Plaintiff's wife did not notify Credit One that she wished to add him as an authorized user to her account. The cardholder agreement provides

that the cardholder or authorized user may use the card "to make purchases" or "to obtain cash advances," neither of which was done by Plaintiff. *Id.* Although an authorized user "will have access to certain account information including balance, available credit and payment information," it does not necessarily follow that access to such information transforms an individual into an authorized user. Credit One's argument that Plaintiff was an authorized user and thus subject to the arbitration clause is not persuasive.

IV. Third-Party Beneficiary

Credit One further argues that Plaintiff is bound by the arbitration clause because he is an intended third-party beneficiary of the cardholder agreement as an authorized user. *See generally Canfora v. Coast Hotels & Casinos, Inc.,* 121 P.3d 599, 604-605 (Nev. 2005) ("Whether an individual is an intended third-party beneficiary. . . depends on the parties' intent, 'gleaned from reading the contract as a whole in light of the circumstances under which it was entered.'"). Essentially, Defendant's third-party beneficiary argument depends upon Plaintiff being designated as an authorized user. Doc. 36 at 18-19. As discussed above, however, there is no evidence that Plaintiff's wife formally designated him as an authorized user of the account or that his "use" of the account made him an

authorized user.  Nor has Defendant cited legal authority for the proposition that, under the circumstances presented here, Plaintiff is an intended third-party beneficiary of the cardholder agreement.

## CONCLUSION

For these reasons, the court finds that Plaintiff is not bound by the cardholder agreement and his claims are not subject to arbitration.

Accordingly, IT IS HEREBY ORDERED that Defendant's motion to compel arbitration (Doc. 36) is DENIED.

Dated:  October 4, 2018

>   s/George Caram Steeh
>   GEORGE CARAM STEEH
>   UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 4, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk